IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

G.C., by and through his parent R.C., and    )
R.C., in his own right,    )
    )
         Plaintiffs,    )
    )
         v.    )    C.A. No. 24-592-RGA
    )
CAPITAL SCHOOL DISTRICT,    )
    )
         Defendant.    )

## REPORT AND RECOMMENDATION

Plaintiff G.C., by and through his parent, R.C. in his own right ("Parent" or, collectively with G.C., "Plaintiffs"), appeal from an unfavorable decision by the Special Education Due Process Hearing Panel ("Hearing Panel") in favor of Defendant Capital School District ("Defendant" or "District") regarding Parent's contention that the District failed to provide emails as part of the records to which Parent is entitled under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (the "IDEA"). (D.I. 1). This Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. § 1291. Consistent with the Court-ordered briefing schedule (D.I. 31), the parties filed and briefed cross-motions for judgment on the supplemental administrative record. (D.I. 32, 33, 34, 35, 37, 38, 39). For the following reasons, I recommend that Plaintiffs' Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

## I. BACKGROUND

### a. Statutory Framework

To contextualize the facts of this case—as well as the litany of acronyms and terminology—a brief overview of various laws is warranted. Under the IDEA, a state must provide

FILED

JAN 2 1 2026

U.S. DISTRICT COURT DISTRICT OF DELAWARE

a free and appropriate public education ("FAPE") to eligible children. 20 U.S.C. § 1412(a)(1). Relevant here, G.C. had a recognized disability qualifying him for a FAPE. (D.I. 1 ¶ 6–8). The mechanism by which a FAPE is provided is the Individualized Education Program ("IEP"), a written statement identifying the child's present performance levels, goals, and concrete steps to evaluate and track the child's progress. 20 U.S.C. §§ 1412(a)(4), 1414(d). The IDEA requires that the school district offer an IEP that is "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013) (internal quotation marks and citation omitted).

The IDEA provides that state and local educational agencies—in consultation with the child's parents or guardian—are responsible for best formulating an educational plan suitable for that child. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 (1982). Parents are members of the IEP and are entitled to participate in the IEP process. 20 U.S.C. § 1400(c)(5)(B). In addition, the IDEA also requires an educational agency to establish a procedure to allow parents to "examine all records relating to such child . . . ." 20 U.S.C. § 1514(b)(1). The IDEA further requires that each participating agency "must permit parents to inspect and review any education records relating to their children that are collected, maintained, or use by the agency under this part." 34 C.F.R. § 613(a). The only definition of "education records" is found in the regulations implementing the IDEA, 34 C.F.R. § 300.611(b) which incorporates the definition of "education records" from the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g(a)(1)(B). Thus, the IDEA defines "education records" as records which "(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

2

Recently, the Delaware statute implementing the IDEA was amended to remove the word "relevant" from the statute's instruction as to what records should be provided to a parent or guardian under the IDEA. The amended language reads as follows: parents "shall have the right to obtain copies of all records" with respect to the "identification, evaluation and educational program and placement of the child" and the "provision of a free, appropriate, public education to the child." 14 *Del. C.* § 3130(b). The corresponding Delaware regulation implementing the statute has yet to be amended to match the statute.

### b. Factual Background

G.C. is a minor who has been diagnosed with "ADHD, Learning Disabilities, and Speech & Language Impairment and has an [IEP] from the District." (D.I. 1 ¶¶ 6, 8). No party denies that G.C. is eligible for specially designed instruction under the IDEA. (*Id.* ¶ 8). On February 16, 2024, Parent filed a request for a due process administrative hearing in the Delaware Department of Education ("DDOE") alleging that the District failed to provide him with the entirety of his son's education records pursuant to the IDEA. (*Id.* ¶¶ 17–21). Parent argued that <u>all</u> emails relating to G.C. should have been provided when he initially requested them on December 6, 2023. (*Id.* ¶¶ 17, 18, 72). During the hearing, the District argued that emails are only education records, and thus required to be provided to Parent, if they both relate to G.C.'s IEP and were printed and placed into his official record; no emails were provided to Parent in response to his December request for G.C.'s records. (D.I. 7 (DP 24-17) ("Tr.")) at 0050–51, 0131–32). On April 17, 2024, the Hearing Panel issued a decision in favor of the District and determined that the law does not require the production of every email associated with a child, only those that are part of the official record—that is, printed or inserted into the child's educational file. (*Id.* at 0110–11). Plaintiffs initiated this action on April 17, 2024, and, on March 24, 2025, filed an unopposed Motion to

Supplement the Administrative record with certain emails produced during discovery, which was granted. (D.I. 1, 30). The Court ordered the filing of motions for summary judgment on the supplemented record. (D.I. 31).

## II.    LEGAL STANDARD

In reviewing a Hearing Panel decision under the IDEA, "the district court appl[ies] a modified version of de novo review." *Munir*, 723 F.3d at 430 (citing *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006)). The district court is required to afford "due weight" to the "'[f]actual findings from the administrative proceedings'" and the court must consider these findings to be "'prima facie correct[.]'" *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 241 (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004)) (first alteration in original). Nonetheless, a district court's review of legal questions is plenary. *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995). The district court may reject the findings of the administrative panel so long as it "fully explain[s] its reasons" for doing so. *Id.* at 527–29.

## III.    DISCUSSION

I begin my analysis by noting that neither party substantively addressed any alleged error of fact.[1] Rather, the only dispute that was briefed by the parties is a legal one. Accordingly, my analysis of whether every email that mentions a student must be produced by the District in accordance with the IDEA is performed *de novo*. If all emails are records that must be produced

---

[1]    Plaintiffs allege in their opening brief in support of their motion for summary judgment that the Hearing Panel committed errors of both law and fact. (D.I. 35 at 1). Plaintiffs' only mention of a factual error in the briefing is that the Hearing Panel mentioned a "student file" when "[t]here is no student file. Only files. Mostly on servers." (*Id.* at 19). Moreover, their answering brief in opposition to Defendant's cross-motion for summary judgment makes only one mention of an "error[] of . . . fact" and presents no argument in support thereof. (D.I. 38 at 1). I need not manufacture an argument on Plaintiffs' behalf, and I determine that any factual errors, if they exist, do not affect my analysis of the IDEA's statutory language.

4

under the IDEA, and thus all emails that related to or mentioned G.C. should have been produced,

then the District may have denied G.C. a FAPE, as it may have "seriously deprive[d] [a] parent[]

of their participation rights." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564–67 (3d Cir. 2010).[2]

Plaintiffs argue that the failure to provide all emails was a FAPE; Defendant, however, does not

respond to that argument beyond denying that it had any obligation to produce all emails.

In accord with numerous other federal courts, and the Supreme Court, I determine that all

emails are not *per se* education records pursuant to the IDEA, and, thus, they were not required

to have been produced by the District when Parent requested them in December of 2023.

Plaintiffs challenge the Hearing Panel's determination that all emails are not *per se*

education records under the IDEA, and the corresponding determination that the District,

therefore, had no obligation to provide them to Parent.   Plaintiffs say the Hearing Panel should

have ordered the District to produce all emails related to G.C. regardless of subject matter or

whether the emails had been placed in G.C.'s file.  (D.I. 35 at 4, 9–12).

The IDEA requires that a school district provide "[a]n opportunity for the parents of a child

with a disability to examine all records relating to such child[.]" 20 U.S.C. § 1415(b)(1). The

statute's implementing regulations add a bit more substance, providing that "[e]ach participating

agency must permit parents to inspect and review any *education records* relating to their children

that are collected, maintained, or used by the agency under this part." 34 C.F.R. § 300.613(a)

(emphasis added).  "Education records," as used in the regulation, "means the type of records

covered under the definition of 'education records' in 34 CFR part 99 (the regulations

implementing the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. 1232(g)

---

[2]    *See also* 34 C.F.R. § 300.513(a)(2)(ii) (Substantive harm occurs if an action "significantly
impeded the parent's opportunity to participate in the decision-making process regarding the
provision of a FAPE to the parent's child").

("FERPA"))."  34 C.F.R. § 300.611(a).  And FERPA defines "education records" as "those records that are: (1) directly related to a student; and (2) maintained by an educational agency or institution[.]"  20 U.S.C. § 1232g(a)(4)(A); 34 C.F.R. § 99.3(a) (defining "education records" in the same way).

Two decades ago, the Supreme Court interpreted "education records" as used in FERPA to determine whether "peer-graded classroom work and assignments" fit the bill.  *Owasso Indep. Sch. Dist. v. Falvo*, 534 U.S. 426 (2002).  In holding they did not, *Owasso* focused in large part on the definition's inclusion of the term "maintain," which the Court indicated was suggestive of the purposeful and intentional keeping of records, such as those records "kept in a filing cabinet in a records room at the school or on a permanent secure database[.]" 534 U.S. at 433.  Moreover, the Supreme Court noted that, under FERPA, institutions shall "'maintain a record, kept with the education records of each student'" that "must list those who have requested access to the student's education records and their reasons for doing so."  *Id.* at 434 (citing 20 U.S.C. § 1232g(b)(4)(A).  And, "FERPA requires a 'record' of access for each pupil" that "must be kept with the education records," charging a "school official" with responsibility for the records.  *Id.* at 434–35. All these indicators, the Supreme Court reasoned, "impl[y] that education records are *institutional records kept by a single central custodian*[.]"  *Id.* at 435 (emphasis added). "Individual assignments handled by many student graders in their separate classrooms" are not that.  *Id.*[3]

---

[3]     Plaintiffs allege multiple failures in the District's recordkeeping policies.  But the gravamen of the issue before the Court is whether *all* emails that mention G.C. are *per se* education records that should have been provided to Parent, not whether there were some emails that should have been kept in G.C.'s student file.  Similarly, whether the District is violating the IDEA and FERPA with, as Plaintiffs argue, its slapdash recordkeeping, is not before the Court.

In the years since *Owasso*, multiple federal courts have applied *Owasso*'s reasoning to conclude that ordinary school-staff emails—like the ones Plaintiffs have requested here—fall comfortably outside the definition of "education records" under the IDEA, except where they are specifically added to a student's official file. *See, e.g.*, *Doe v. Rutgers*, 2023 WL 2239399, at *3 (3rd Cir. Feb. 27, 2023) (holding that routine emails are not subject to FERPA's right-of-access provision "because they are not . . . institutional records and are not held by a central custodian"); *Burnett v. San Mateo Foster City Sch. Dist.*, 739 F. App'x 870, 873–74 (9th Cir. 2018) (holding that an "education record" under the IDEA "is defined by the regulations implementing" FERPA, 34 C.F.R. § 300.611(b), and concluding that school district did not violate IDEA "when it only turned over emails concerning [a student] that had been printed and added to [the student's] physical file"); *J.T. v. D.C.*, 2025 WL 2029822, at *13–15 (D.D.C. July 21, 2025) (concluding that even work emails kept on a school's secure server are not *per se* education records under FERPA and the IDEA because they " ignore[] the more nuanced interpretation of 'maintain' explicated by the Supreme Court in *Owasso* and applied in many cases since to exclude routine email correspondence"); *S.B. v. San Mateo Foster City Sch. Dist.*, 2017 WL 4856868, at *18 (N.D. Cal. Apr. 11, 2017) (agreeing it was appropriate for the school district to limit production of "education records" to "those contained in [the student's] central file"); *E.D. v. Colonial Sch. Dist.*, 2017 WL 1207919, at *10 (E.D. Pa. Mar. 31, 2017) ("Unless Defendant kept copies of e-mails related to E.D. as part of its record filing system with the intention of maintaining them, we cannot reach the conclusion that every e-mail which mentions E.D. is a bona fide education record within the statutory definition."); *S.A. v. Tulare Cnty. Ofc. of Educ.*, 2009 WL 3126322, at *5–7 (E.D. Cal. Sept. 24, 2009) (concluding that emails not placed in a student's "permanent

file" are not "maintained" by the school district and thus not "education records"). This Court agrees.

Plaintiffs advance several arguments to persuade this Court to ignore the body of case law that goes the other way. First, Plaintiffs argue that the District's emails are "maintained" by the State of Delaware, Department of Technology Information on behalf of the District, such that all emails are automatically "education records" under *Owasso*. (D.I. 38 at 14). Plaintiffs' argument oversimplifies the necessary analysis and ignores the more nuanced interpretation of "maintain" set forth in *Owasso* and applied in many cases since to exclude routine email correspondence from the ambit of "education records" under FERPA and the IDEA. As interpreted by the Supreme Court, "maintain" does not merely mean "to store." Utilizing an email system and backing it up on a server that is kept not by the District but by the State of Delaware does not invoke the level of intentionality and purposefulness that *Owasso* contemplates. Moreover, as set forth above, determining that all emails are not necessarily "education records" is in accord with the vast majority of authority on the issue.[4]

---

[4]    Plaintiffs rely heavily on two U.S. Department of Education Letters, *Letter to Baker* and *Letter to Husk*, in support of their argument that all emails are *per se* education records. (D.I. 35 at 10–12). Even if I found the facts to be analogous here, and I do not, they were issued in 2005 and 2006, respectively. Since then, numerous District and Circuit courts have engaged in interpretation of *Owasso*. *See supra*, gathering cases. Further, and more importantly, neither Letter meaningfully engages with the required intentionality and purposefulness that *Owasso* contemplates in its definition of what it means to maintain records. Plaintiffs' reliance upon *Pollack v. Reg'l Sch. Unit 75*, 2015 WL 1947315 (D. Me. Apr. 29, 2015), appears similarly misplaced. To start, *Pollack* appears to be an outlier, and it was decided before the cases in the Third Circuit that support the District's position here. Moreover, while *Pollack* determined that the IDEA's "all records" is broader than FERPA's "education records," it did so largely in a vacuum without accounting for the IDEA's incorporation of FERPA's definition and, while possibly well supported, the opinion does not contain sufficient explanation to rely upon it here—especially when it goes against the weight of authority in the Third Circuit.

Plaintiffs also advance two interrelated arguments regarding the issue of confidentiality that they claim are dispositive of the issue pending before this Court. First, Plaintiffs argue that the IDEA incorporates FERPA's definition of "education record" only with respect to confidentiality. (D.I. 38 at 5–6). According to Plaintiffs, this means that every other reference to "education record" or "record" in IDEA is undefined, and that the only time FERPA's definition of "education record" applies when interpreting the IDEA is on the issue of confidentiality. In advancing this argument, they cite to no authority where any other court or administrative body has ever interpreted "education records" under IDEA and FERPA as they now suggest, and I will not be the first to do so.

Relatedly, in the course of discovery in this litigation, the District produced the emails to Parent that Parent claims should have been produced upon demand. When the District did so, to the extent the emails contained personally identifiable information of other students, it redacted that information. Plaintiffs argue that the District's decision to redact other students' information proves that they should prevail in this litigation. Their argument goes like this: FERPA only requires the District to maintain confidentiality of other students' information where the records are "education records;" because the District sought (and was given permission by this Court, D.I. 29) to redact other students' information from the emails, those email must, necessarily, be "education records;" and, if they are "education records" then the District should have produced them when Parent first requested them. (D.I. 38 at 15–16). This argument finds no support in the plain text of the statute. FERPA demonstrates an intent to protect personally identifiable information regardless of whether that information is contained in an "educational record." FERPA provides, in pertinent part, that:

> (6) For purposes of this section, the term "student" includes a person with respect to whom an educational agency or institution maintains

> education records or ***personally identifiable information*** . . . .

20 U.S.C. § 1232g(a)(6) (emphasis added).

> (1)    No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (***or personally identifiable information contained therein other than directory information*** . . . .)

20 U.S.C. § 1232g(b)(1) (emphasis added).

Plaintiffs do not address this language. Nor (as with the related argument) do Plaintiffs cite to any authority whatsoever where any court has ever taken the position that they now urge this Court to take. It makes sense that Plaintiffs would be unable to find any such authority because it is clear that some emails may contain personally identifiable information that warrants redaction regardless of whether those emails are deemed "educational records" under the IDEA and FERPA.

Last, Plaintiffs argue that the recent amendment to a subsection of Delaware's statute implementing the IDEA compels a decision in their favor. (D.I. 38 at 7). In so arguing, Plaintiffs focus on one section of the statute while ignoring the rest. Section 3130(b) of Title 14 of the Delaware Code, "Opportunity to examine records and education program," was recently amended to remove the word "relevant" as modifying "records" such that the final text of the statute is as follows:

> (a) The parents of a child with a disability, either personally or through a representative, shall be afforded an opportunity to inspect and review all records with respect to:
>
> (1) The identification, evaluation and educational program and placement of the child; and
>
> (2) The provision of a free, appropriate, public education to the child.

10

14 *Del. C.* § 3130(b).

Plaintiffs' argument focuses on the text of subsection (a)—that parents "shall be afforded an opportunity to inspect and review all records"—to argue that "all records" must necessarily include all emails. But that argument ignores subsections (1) and (2), which modify (a), and make clear that inspection and review is limited "the identification, evaluation and educational" program and placement, *and* the "provision of a free, appropriate, public education" to the student. Notably, Plaintiffs fail to include any of the text from subsections (1) and (2) in their argument. Nor do Plaintiffs address this text anywhere to show how all emails could possibly satisfy both (1) and (2).

Simply put, based on the governing legal precedent, the evidence presented at the hearing, the parties' briefing, and the supplemental record, the Hearing Panel appropriately concluded that the District did not violate the IDEA by declining to produce every email that mentioned G.C.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.

The parties are directed to the Court's "Sta1nding Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: January 21, 2026

_____
Laura D. Hatcher
United States Magistrate Judge