IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

G.C. and R.C.,

          Plaintiffs,

v.

CAPITAL SCHOOL DISTRICT,

          Defendant.

Civil Action No. 24-592-RGA

MEMORANDUM ORDER

The parties filed cross-motions for summary judgment based on a supplemented administrative record. (D.I. 32; D.I. 33). The Magistrate Judge issued a R&R recommending that Defendant's motion be granted and Plaintiffs' motion be denied. (D.I. 41). Despite Plaintiffs' description of the R&R as "thoughtful" (D.I. 42 at 1), they filed objections arguing a litany of errors in the R&R. Since the supposed errors are all legal, I review them de novo. I write simply to address the objections, so I do not explain the factual background for this case.

Plaintiffs say the R&R misunderstood their position about the email records they were seeking. (D.I. 42 at 2-3). The R&R described the emails being sought as "all emails relating to [the child]." (D.I. 41 at 3). Plaintiffs object that they did not describe the emails as "all." (D.I. 42 at 2). Other than to say that the emails must "directly relate" to the child, Plaintiffs do not identify any emails that they were not seeking. (*Id.*). In Plaintiffs' request for relief, Plaintiffs sought "an Order adjudicating that emails directly related to [the child] should have been provided . . . ." (D.I. 1 at 15). Presumably, if any email mentions the child, it is "directly related" to the child. Thus, I do not think the R&R errs in describing Plaintiffs as seeking all emails relating to the child. Further, I do not think the supposed error has any impact on the

Page 1 of 7

outcome of the summary judgment motions.  Defendant's position was not and is not that the email request is overbroad; it was and is that emails, unless added to the child's central education file(s), were not required to be produced.  The production of emails was to be guided by the location of their storage, not by their content.  I overrule the objection.

The R&R contains a statement about the lack of case authority for Plaintiffs' argument about the incorporation of FERPA in IDEA's confidentiality regulations.[1]  (D.I. 41 at 9).  Plaintiffs make an objection (D.I. 42 at 3), but in doing so, they mischaracterize what the R&R says, and they again do not provide any case authority (*id.* at 3-4).  I overrule the objection.

The main point of the rest of the objections concerns the R&R's statutory analysis.  (*See id.* at 3-10).

I start with the IDEA. The relevant IDEA section requires procedural safeguards that state and local educational agencies have to provide, which include:

> An opportunity for the parents of a child with a disability to examine *all records* relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child.

20 U.S.C. § 1415(b)(1) (emphasis added).[2]

Pursuant to regulations implementing the IDEA,

> Each participating agency must permit parents to inspect and review any *education records* relating to their children that are collected, maintained, or used by the agency under this part. The agency must comply with a request without unnecessary delay and before any meeting regarding an IEP, or any hearing pursuant to §

---

[1] FERPA is the Family Educational Rights and Privacy Act, enacted in 1974. *Owasso*, 534 U.S. at 428.  IDEA is the Individuals with Disabilities Education Act, enacted in 1975 (under a different name).

[2] This version of § 1415(b)(1) was enacted in 1997.  P.L. 105-17 (June 4, 1997).  The 1997 law replaced an earlier version that was different in two respects, only one of which is relevant to this case.  Instead of the current "all records," the earlier language was "all relevant records."  I think it is clear that "all records" is broader than "all relevant records."  P.L. 94-142 (Nov. 29, 1975).

300.507 or §§ 300.530 through 300.532, or resolution session pursuant to § 300.510, and in no case more than 45 days after the request has been made.

34 C.F.R. § 300.613(a) (emphasis added).

"As used in §§ 300.611 through 300.625," "education records" is a defined term. It "means the type of records covered under the definition of 'education records' in 34 CFR part 99 (the regulations implementing the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. 1232g (FERPA))." 34 C.F.R. § 300.611.

FERPA has the following definition of "education records."

(A) For the purposes of this section, the term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—
(i) contain information directly related to a student; and
(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.
(B)The term "education records" does not include—
(i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;
(ii) records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement;
(iii) in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose; or
(iv) records on a student who is eighteen years of age or older, or is attending an institution of postsecondary education, which are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in his professional or paraprofessional capacity, or assisting in that capacity, and which are made, maintained, or used only in connection with the provision of treatment to the student and are not available to anyone other than persons providing such treatment, except that such records can be personally reviewed by a physician or other appropriate professional of the student's choice.

20 U.S.C. § 1232g(a)(4)(A)&(B).

Page 3 of 7

The "Part 99" FERPA regulations generally track the statutory section. I quote relevant portions:

(a) The term ["education records"] means those records that are:
(1) Directly related to a student; and
(2) Maintained by an educational agency or institution or by a party acting for the agency or institution.
(b) The term does not include:
(1) Records that are kept in the sole possession of the maker, are used only as a personal memory aid, and are not accessible or revealed to any other person except a temporary substitute for the maker of the record.
(2) Records of [law enforcement].
(3) . . . Records relating to an [employee].
(4) [Various] Records on a student who is 18 years of age or older, or is attending an institution of postsecondary education, that are [relating to health treatment]; and
(5) Records created or received by an educational agency or institution after an individual is no longer a student in attendance and that are not directly related to the individual's attendance as a student.
(6) Grades on peer-graded papers before they are collected and recorded by a teacher.

34 C.F.R. § 99.3.

In Plaintiffs' objections, they argue that the definition of "education records" in FERPA should not be incorporated into "all records" as set forth in IDEA § 1415. (D.I. 42 at 3-5).[3]

Plaintiffs make this argument in two parts. First, Plaintiffs state the IDEA and FERPA have different purposes. *See Pollack v. Regional Sch. Unit 75*, 2015 WL 1947315, at *8 (D. Me. Apr. 29, 2015). By itself, that the two statutes have different purposes does not seem particularly relevant. Second, Plaintiffs point out the difference in the statutory language in IDEA § 1415 and regulation language in 34 C.F.R. § 300.613(a). That difference seems a lot more relevant.

The resolution of the dispute in this case is not clear-cut. The Supreme Court case, *Owasso Ind. Sch. Dist. v. Falvo*, 534 U.S. 426 (2002), interpreted FERPA. The non-precedential

---

[3] Plaintiffs made this argument in the original briefing. (D.I. 35 at 5-9).

Third Circuit case, *Doe v. Rutgers*, 2023 WL 2239399 (3d Cir. Feb. 27, 2023), interpreted FERPA. Neither case even mentions the IDEA.

There are cases that decide the interpretation issue as an IDEA issue. The record reveals five[4] cases that expressly decide the issue. Four of them support the conclusion of the Hearing Panel and the R&R. One of them does not.

The four cases basically follow the same analysis. Because the implementing regulations of the IDEA appear to set forth "maintained" "education records" as a gloss on "all records" of the statute, and because "education records" is defined with reference to FERPA, the Supreme Court's interpretation of "maintained" "education records" in *Owasso* is determinative of what the IDEA's "all records" requires. *See Burnett v. San Mateo Foster City Sch. Dist.*, 739 F. App'x 870, 873-74 (9th Cir. 2018) (emails not IDEA education records because not maintained); *J.T. v. District of Columbia*, 2025 WL 2029822, at *13-15 (D.D.C. July 21, 2025) (same); *E.D. v. Colonial Sch. Dist.*, 2017 WL 1207919, at *10 (E.D. Pa. Mar. 31, 2017) (same); *S.A. v. Tulare County Office of Educ.*, 2009 WL 3126322, at *4-7 (E.D. Ca. Sept. 24, 2009) (same).

The case going the other way is *Pollack v. Regional Sch. Unit 75*, 2015 WL 1947315, at *8 (D. Me. Apr. 29, 2015). The two lines of cases split on the importance of the "education records" gloss in the IDEA regulation. *Pollack* points out that "all records" of the statute and "education records" of the regulation do not necessarily mean the same thing. The majority line of cases accepts the "education records" of the regulation as a proper substitute for the "all records" of the statute. One court described the regulation as "add[ing] a bit more meat to those bones [of the statute]." *J.T.*, 2025 WL 2029822, at *14. The regulation makes sense as a

---

[4] The record actually identifies six cases, but two of them are the district court and court of appeals decisions in the same case. I treat that as one case.

reasonable means to implement the statute, particularly considering that the statute was enacted in 1997.[5] The "all records relating to [the] child" of the statute would sweep up records that have little or no relationship to providing the child with a free appropriate public education. It would sweep up records that are hard to find. It would be costly.[6]

I do not think, however, that the regulation reflects what the statute says. The statute requires the production of "*all records* relating to such child." I think the usual meaning of "all" is 100%.[7] The usual meaning of "records" is something that is recorded,[8] which I usually equate with being written down, although in a broad sense it could include audio and video. Bottom line, "all records" is about as broad of a description as one could create. Possibly, the inclusion of "all records" in the larger statutory section of the parent's right to "participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child," 20 U.S.C. § 1415(b)(1), would provide some limiting principle to the "all records" language, but whatever that principle might be ("all education records"?), it would not categorically exclude emails.

The Supreme Court recently summed up the state of the law:

---

[5] I can remember that even ten years later, when I worked for a state agency, the production of historical emails was considered an immense undertaking to be avoided at all costs.

[6] In *Doe v. Rutgers*, a FERPA case, the student was told that he would have to pay a service fee of $7,020 for the time and effort needed to review and redact emails. 2003 WL 2239399, at *1.

[7] At the time the statute was enacted, "All" was defined as "the whole amount or quantity of" or "the whole number or sum of" or "every." Merriam-Webster's Collegiate Dictionary, "All," Tenth ed., p. 29 (1997). I understand "all" to be 100% of the records, limited only by any other applicable laws such as those relating to privacy or confidentiality.

[8] "Record" as a noun was defined as "the state or fact of being recorded." There is, I think, some play in "record" that there is not in "all." For example, one definition of "record" was "a collection of related items of information (as in a database) treated as a unit." Merriam-Webster's Collegiate Dictionary, "Record," Tenth ed., p. 977 (1997). The plural of "record" is "records." I do not think the use of the plural has any limiting effect.

> Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

As I understand things, I am supposed to interpret 20 U.S.C. § 1415(b)(1), not 34 C.F.R. § 300.613(a).[9] "[A]gency interpretations of statutes . . . are *not* entitled to deference." *Loper Bright*, 603 U.S. at 392. I think the statute is clear. Thus, I think I must go against the weight of authority, something that I do reluctantly. I conclude that the Hearing Panel's decision must be reversed.

The Recommendation of the R&R (D.I. 41) is REJECTED. Plaintiffs' motion for summary judgment (D.I. 32) is GRANTED. Defendant's motion for summary judgment (D.I. 33) is DENIED.

IT IS SO ORDERED this 18th day of March 2026.

_____
United States District Judge

---

[9] This is not the type of case in which I must determine whether the regulation complies with power properly delegated to an agency by Congress. The IDEA authorizes "regulations under this chapter only to the extent that such regulations are necessary to ensure that there is compliance with the specific requirements of this chapter." 20 U.S.C. § 1406(a). "Necessary" alone in this context does not delegate broad discretion. *See Michigan v. EPA*, 576 U.S. 743, 752, 757 (2015); *Armour & Co. v. Wantock*, 323 U.S. 126, 129–32 (1944). Nor does this wording indicate that it is the type of statute designed to "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme." *Loper Bright*, 603 U.S. at 395 (quoting *Wayman v. Southard*, 23 U.S. 1, 43 (1825)).